Rockingham, }
Jan. 5, 1909. }

KIDD & a. v. NEW YORK SECURITY AND TRUST CO. & a.

In a proceeding to set aside a transfer of the assets of a corporation on the ground of fraud, a general decree in favor of the defendants includes a finding that the contract sought to be annulled was not the result of fraud and conspiracy on their part, if there is evidence on which such a finding could be based.

A contract of a corporation is not to be annulled because one of the directors was disqualified by reason of personal interest from acting in behalf of the company, when it appears that the dissenting shareholders were aware of all material facts and circumstances relating to the agreement, considered the contract advantageous to themselves, and acquiesced in the provision upon which their claim of invalidity is based.

Questions of law once decided are not reëxamined upon a subsequent transfer, especially where equity and justice do not require it.

BILL IN EQUITY, by the owners of all the preferred stock of the Massachusetts Construction Company Incorporated, in behalf of themselves and all other stockholders of the corporation, to set aside a transfer of the assets of the corporation to the New York Security and Trust Company, on the ground of fraud and conspiracy, and for an accounting. Transferred from the October term, 1907, of the superior court by *Peaslee*, J.

The case is the same as that reported 72 N. H. 273 and 74 N. H. 160, and the facts found and evidence reported upon the previous transfers are made a part of this case. After the case was remanded, it was reargued in the superior court upon the evidence previously reported, the decree against the Trust Company was set aside, a decree dismissing the bill as to all the defendants, without costs, was entered, and certain additional facts were found. The plaintiffs excepted to the decree dismissing the bill, to additional facts found, and to the refusal of the court to make certain rulings and findings specially requested by them.

*Streeter & Hollis* and *Roger F. Sturgis* (of Massachusetts), for the plaintiffs.

*Sargent & Niles, Burnham, Brown, Jones & Warren,* and *Hornblower, Miller & Potter* (of New York), for the defendants.

BINGHAM, J. The questions presented upon the previous transfer of this case related to the validity of the decree of the superior court in favor of the plaintiffs, based upon certain findings of fact

and rulings of law, to the effect that the Trust Company's letter of January 3, 1902, was not an acceptance of the Connecticut Company's proposal contained in the instrument of December 28, 1901, but a modification of it and the submission of a counter-proposal which was not accepted by the Connecticut Company until after December 31, 1901; that after that date the Connecticut Company was a mere agency of the Trust Company and incapacitated from contracting with it; that the Trust Company consequently stood with relation to the plaintiffs, who are preferred stockholders in the Connecticut Company, as trustee, and bound to account to them as such and not according to the instrument of December 28. But this court, after an extended consideration of the questions, held that the rulings of the superior court, read in the light of the facts upon which they were based, were erroneous, and that the decree for the plaintiffs should be set aside; that it did not appear but that the Connecticut Company was an independent agency and free from the control of the Trust Company down to December 31, when its board of directors authorized its president and secretary to sign the instrument of December 28, which they then in fact signed; that the Trust Company's assent was given January 3, when its officers signed the contract; and that the proposition of the Trust Company contained in its letter of January 3, relating to the high tension service, if ever legally assented to by the Connecticut Company, was not a modification of the contract of December 28, but collateral to it.

The case was then sent back to the superior court for a determination of the question whether the contracts of November 12 and December 28 were procured through the fraud and conspiracy of the defendants, that being the only question raised by the pleadings and left open upon the record. This question was afterward argued in the superior court upon the evidence originally submitted, and thereupon the trial justice set aside the former decree, entered a decree dismissing the bill as to all the defendants, and made certain findings of fact in addition to those previously reported. He did not specifically find that the contracts of November 12 and December 28 were not procured through fraud, but the general decree was in favor of the defendants; and as there was evidence upon the question of fraud and it was conflicting, the decree includes a finding that the contracts were not the result of fraud and conspiracy on their part. *Allen* v. *Association*, 72 N. H. 525; *Concord Coal Co.* v. *Ferrin*, 71 N. H. 33; *Allard* v. *Hamilton*, 58 N. H. 416; *Noyes* v. *Patrick*, 58 N. H. 618. The special finding upon which the plaintiffs lay particular stress,—that " the taking of the E. H. & A. division from the Connecticut Company by the Trust Company under the contract of November 12 was intentiou-

ally concealed from the plaintiffs by the defendants until after this bill was filed, for the purpose of preventing the plaintiffs from taking measures to prevent the consolidation,"—if supported by the evidence, comes to nothing; for if such was the defendants' purpose, it is not found that they were successful in carrying it out, or that if the plaintiffs had known of the proposed transfer they would have taken steps to prevent consolidation. They took no action of this nature when they learned of the contract of December 28; and the trial judge may have very properly concluded, when he made the general decree dismissing the bill, that they would have pursued the same course with reference to the contract of November 12.

This brings us to a consideration of the plaintiffs' seventeenth request, wherein they asked the trial court to rule and find that " the contract of December 28 is not binding for lack of a qualified quorum of directors." This request was denied. The plaintiffs now contend that by the ninth clause of the contract of December 28 it appears that Lovell was to receive an annual salary of $6,000 for two years from the Trust Company, for services he was to render in furthering the purposes of the Traction Company, which would give him a personal interest in the contract antagonistic to that of the Connecticut Company and would therefore disqualify him as a director in authorizing the contract in behalf of that company; and that the records of the directors' meeting of December 31, at which the contract was authorized, disclose that his presence was necessary to constitute a quorum of the board, that he participated in the meeting and voted in favor of the contract, and that it is therefore void or voidable, though capable of confirmation. *State* v. *Richmond*, 26 N. H. 232, 238; 1 Mor. Corp., *s.* 524.

This question was not raised upon the former transfer of the case, although the facts upon which the contention is now based were then presented by the record. Nor does it appear that Lovell's interest in the contract was urged or suggested as a reason for his disqualification as a director at the hearing before the trial judge after the case was remanded; but if it was, and the denial of the request was based upon a finding of fact and ruling of law, then the legal question herein insisted upon may not exist. That a corporation may ratify the unauthorized transaction of its agents by the unanimous acquiescence of its stockholders, as well as by the vote of the majority in a corporate meeting, would seem not to be open to question. 1 Mor. Corp., *s.* 525. Consequently, if there was evidence from which it could have been found that the plaintiffs, who owned all the preferred stock, and Lovell, who owned all the common stock, acquiesced in the provision of the contract to which objection is made, or waived their right to object

to it, the fact is to be taken as found; for the general decree carries the presumption that all facts were found necessary to sustain it and of which there was evidence. *Dusseault* v. *Association*, 74 N. H. 407, and cases above cited.

It is clear that acquiescence on the part of Lovell could have been found from the fact that he was a party to the contract and the chief beneficiary under the provision here in question. As to Kidd, it appears that his counsel was shown the instrument of December 28 seven days after it was executed by the Trust Company; that on that date he wrote Kidd and enclosed a copy of the agreement; that he called Kidd's attention to the particular provision relating to the employment of Lovell at a salary of $6,000 a year for two years, and congratulated him upon the prospect of his receiving "some income" from Lovell because of the salary and the payment of "regular dividends . . . upon the preferred stock of the Connecticut Company." And as to Whitcomb, it appears that in January, 1902, he knew of the contract of December 28, considered it advantageous to him, and expected the Trust Company would carry it into effect; that he became a director in the Traction Company at an early date, took part in the directors' meeting of that company, January 21, when the Trust Company's proposition for a sale to the Traction Company of the securities received from the Connecticut Company was acted upon, and in other ways recognized the validity of the agreement. From this and other evidence of similar import, and the fact that no objection was raised by Kidd or Whitcomb for over six years after they were fully informed about the provision giving Lovell a personal interest in the contract, it reasonably could have been concluded that they, as well as Lovell, were satisfied with and acquiesced in the provision.

This conclusion is not inconsistent with the special finding that the plaintiffs "never assented to a sale by the Trust Company to the Trust Company"; for the sale or contract to which this finding relates is the supposed contract or sale of December 28, as modified by the Trust Company's letter of January 3, and not the contract or sale by the Connecticut Company to the Trust Company, which we are now considering. And if the finding, that "the plaintiffs knew of the contract of December 28 in the following January, but did not understand its scope," is capable of being construed as inconsistent with the conclusion that they must have known that this provision gave Lovell a personal interest in the contract, the special finding is to that extent not supported by the evidence; for as reasonably intelligent men they could not have understood otherwise. But it seems that this finding is not to be so broadly construed, in view of the further finding that the plain-

tiffs " considered the contract of which they knew [the instrument of December 28] advantageous to them and expected the Trust Company to carry it into effect." As the plaintiffs considered the contract advantageous to them, and knew and acquiesced in the provision in Lovell's behalf, they cannot now avail themselves of this objection.

The only remaining question relates to the plaintiffs' request to be reheard upon the precise questions that were decided when the case was here upon the previous transfer. As to this it may be said that if the plaintiffs were not content with the former decision, they should have seasonably applied for a rehearing in accordance with the tenth rule of court. Not having done so, they are now concluded by the long established practice of this court, that questions of law once decided will not be reëxamined upon a subsequent transfer, especially where equity and justice do not require it. *Bell* v. *Woodward*, 47 N. H. 539; *S. C.*, 48 N. H. 437; *Bell* v. *Lamprey*, 58 N. H. 124; *Carter* v. *Jackson*, 58 N. H. 156; *Ashuelot R. R.* v. *Elliot*, 58 N. H. 451; *Plaisted* v. *Holmes*, 58 N. H. 620; *Preston* v. *Insurance Co.*, 59 N. H. 49; *Amoskeag Mfg. Co.* v. *Head*, 59 N. H. 332; *Weare* v. *Deering*, 60 N. H. 56; *Hedding* v. *Gallagher*, 72 N. H. 377; *Olney* v. *Railroad*, 73 N. H. 85. The grounds upon which the plaintiffs desire a reëxamination of these questions are highly technical; and as it is found that the contracts were not unconscionable and were not procured through fraud, justice does not require the adoption of such a course.

*Plaintiffs' exceptions overruled.*

Peaslee, J., did not sit: the others concurred.